IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CASE NO. 5:10-CV-00068-RLV-DSC

| | |
|---|---|
| CHARLES E. HLATKY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND ORDER** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**THIS MATTER** is before the Court on Plaintiff's Motion for Summary Judgment (Doc. 12), filed September 1, 2010, and Defendant Commissioner's Motion for Summary Judgment (Doc. 13), filed November 4, 2010.

Pursuant to 28 U.S.C. § 636(b)(1)(B), United States Magistrate Judge David S. Cayer was designated to consider and recommend disposition of the aforesaid motions. In a Memorandum and Recommendation Opinion ("M & R"), filed November 9, 2010, the Magistrate Judge recommended that Plaintiff's Motion for Summary Judgment be denied, that Defendant's Motion for Summary Judgment be granted, and that the Commissioner's decision be affirmed. These motions are considered herein.

### I. INTRODUCTION

The Court adopts the uncontested Procedural History as set forth on pages one and two of Magistrate Judge Cayer's M & R.

### II. STANDARD OF REVIEW

The Federal Magistrate Act provides that a district court shall make a de novo

1

determination of those portions of a magistrate judge's report or specific proposed findings or recommendations to which objection is made. 28 U.S.C. § 636(b)(1); *Camby v. Davis*, 718 F.2d 198, 199–200 (4th Cir. 1983). The Court's review of the Commissioner's final decision is limited to the following two issues: whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). So long as a reasonable mind might accept as adequate the evidence in support of the Commissioner's decision, the Court should not reweigh the evidence or substitute its judgment for that of the Commissioner. *Hays*, 907 F.2d at 1456 (4th Cir. 1990); *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

### III. DISCUSSION

A. The ALJ Did Not Err in Determining that Plaintiff Could Perform His Past Work

Plaintiff primarily assigns error to the Administrative Law Judge's ("ALJ's") unfavorable determination that he is capable of performing past relevant work.[1] (Docs. 12-1, 16.)

---

[1] Plaintiff also assigns error to the ALJ's determination of his residual functional capacity ("RFC"). The M & R states that because the ALJ's initial finding concerning Plaintiff's return to his past relevant work is supported by substantial evidence, the Magistrate Judge did not reach this issue. Although, as Plaintiff points out, "the adjudicator *must* assess RFC" in disability determinations "made at steps 4 and 5," SSR 96-8p (emphasis added), and although the ALJ decided Plaintiff's case at step four of the sequential evaluation process, the Magistrate Judge's approach is sensible here because a successful, relevant work attempt, supported by substantial evidence, may preclude a finding of disability during the time of that attempt, 20 C.F.R. §§ 404.1571 ("[W]ork . . . that you have done during any period in which you believe you are disabled may show that you are able to work at the substantial gainful activity level. If you are able to engage in substantial gainful activity, we will find that you are not disabled."), 404.1574(a)(1)–(2) ("[I]f you worked for substantial earnings, we will find that you are able to do substantial gainful activity," unless "we have information that shows that we should not count all of your earnings" or the work attempt was unsuccessful.). Axiomatically, if one were demonstrably capable of continuously and successfully performing past relevant work within the time frame of the alleged disability, one's residual functional capacity would have been adequate

2

Plaintiff accordingly objects to the Magistrate Judge's M & R and asks that the case be remanded to the Commissioner. (Doc. 16.)

As regards the ALJ's finding that Plaintiff could and did return to his past relevant work as a welder in 2007, Plaintiff bears the burden of proving that he was in fact unable to so return, *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992), and that certain work experience did not constitute "past relevant work," *Barnes v. Sullivan*, 932 F.2d 1356, 1359 (11th Cir. 1991), for instance, by proving that the work experience was actually an unsuccessful work attempt, *Seitz v. Astrue*, No. 3:08-3555, 2009 WL 2392159, at *2 (E.D. Va. Aug. 4, 2009) (discussing the burden of proof); 20 C.F.R. § 404.1574(a)(1) (deeming an "unsuccessful work attempt" to include "work that [the Claimant is] forced to stop . . . after a short time because of [his or her] impairment"). Plaintiff also has the burden of producing evidence as to the demands of his past relevant work. 20 C.F.R. § 404.1512(c)(3). In agreement with the Magistrate Judge, this Court determines that the ALJ properly held that Plaintiff failed to satisfy his burden of proof.

Plaintiff first argues that his work in 2007 as a welder was an unsuccessful work attempt because it lasted between three and six months, and that the ALJ erred in finding that he worked for more than six months.[2] *See* 20 C.F.R. § 404.1574(c)(4) (stating, in relevant part, that work

---

to perform past relevant work during that time. In conjunction with the ALJ's well-supported finding that Plaintiff's work attempt resulted in earnings above the amount set in the regulatory guidelines defining substantial gainful activity (Doc. 9-2 at 16), Plaintiff's successful work attempt is sufficient to preclude a finding of disability, without regard to any additional RFC analysis. However, while the Court does not feel compelled to review the ALJ's RFC assessment, it will nonetheless do so out of an abundance of caution, as discussed *infra*.

[2] In support of this position, Plaintiff points to a written statement he made indicating that he worked for only three months in 2007 as well as his 2007 earnings of $12,800, which would equate to at most twenty weeks of work, assuming consistent forty-hour work weeks at the stated pay rate of sixteen dollars per hour. (Doc. 12-1 at 12.) However, the Magistrate Judge and ALJ took note of Plaintiff's testimony, in which it was stated that he worked between five and seven

3

lasting between three and six months will be considered an unsuccessful work attempt if the work ended because of the claimant's impairment and the claimant was frequently absent from work because of the impairment); 20 C.F.R. § 404.1574(c)(5) (stating that work lasting longer than six months is a successful work attempt). Plaintiff further assigns error to the Magistrate Judge's determination that "it was not incumbent upon the ALJ to obtain more detailed earnings information,[ which may have precisely established the length of time of Plaintiff's 2007 work attempt,] since it was Plaintiff's burden to establish that his work as a welder in 2007 did not qualify as past relevant work."[3] (Doc. 15 at 5.)

As Plaintiff notes, an ALJ has a "responsibility to help develop the evidence." *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). Relying on *Cook*, Plaintiff argues that this responsibility extends to aiding Plaintiff in satisfying his burden of proof by requesting a "more detailed earnings record" from Plaintiff's former employer.[4] (Doc. 16 at 2–3.) However, the errors of the ALJ in *Cook* were not mirrored in the present case. In *Cook*, the ALJ made an

---

months—from January to July—as a welder in 2007 and that he did not consistently work forty-hour work weeks during that time. (Doc. 9-2 at 16, 31; Doc. 15.) Indeed, his hours changed weekly, and for some time, Plaintiff worked approximately thirty hours per week. (Doc. 9-2 at 31; Doc. 15 at 5.) Plaintiff's counsel represented in a letter to the ALJ that Plaintiff worked full-time only his first month, missing work one or two days a week thereafter due to doctor's appointments and hospital visits, which caused Plaintiff to be reduced to part-time status. (Doc. 9-6 at 59.)

[3] The Court notes that Plaintiff does not identify what the missing evidence would have shown; rather, he merely speculates that having that evidence might have altered the analysis.

[4] Plaintiff also references "SSR 05-2p" to support this argument. (As there is no Social Security Ruling so designated, the Court assumes the intended reference to be SSR 05-2.) The Commissioner correctly notes that this regulation is not on point and provides only that the Agency need not rely *solely* upon a claimant's statements as to why his or her work ended or was reduced below the substantial gainful activity level. Rather, if impartial evidence is not in the record, the Agency is free to seek out such evidence.

4

unreasoned determination that the claimant's arthritis did not meet or equal a listed impairment without having evidence in the record that was pertinent to the criteria of the listed impairment. *Cook*, 783 F.2d at 1173. *Cook* illustrates a complete failure on the part of the ALJ to explore the relevant facts and inquire into the issues "necessary for adequate development of the record." *Id.*

Here, the ALJ considered Plaintiff's earnings statement (Doc. 9-5 at 12, 16–17); a letter, submitted to the ALJ months after the oral hearing took place, asserting that Plaintiff worked a mere three months or less (Doc. 9-6 at 59);[5] and Plaintiff's hearing testimony (Doc. 9-2 at 27–44). Furthermore, and more significantly, the ALJ analyzed Plaintiff's work attempt as if it lasted more than three months but no more than six months. That is, the ALJ rejected Plaintiff's argument that his 2007 work attempt was unsuccessful on the grounds that Plaintiff's impairment did not force him to stop working, and not simply because the work attempt was of a greater-than-six-month duration. (Doc. 9-2 at 16–17.) Accordingly, no further inquiry on the part of the ALJ was necessary for the record's adequate development.

Plaintiff, however, disputes the ALJ's finding that Plaintiff's impairment did not cause his termination from employment, suggesting instead that he was fired for frequently missing work for the purpose of finding a surgeon to perform a colostomy reversal.[6] (Doc. 9-2 at 41;

---

[5] The ALJ ultimately disregarded this assertion. If it were true, Plaintiff would have worked over sixty hours per week, in clear contradiction to his earlier testimony.

[6] The M & R and Plaintiff's Objection also address the second pertinent criterion of 20 C.F.R. § 404.1574(c)(4), which Plaintiff must also satisfy, namely, that Plaintiff must have been "frequently absent from work because of [his] impairment." 20 C.F.R. § 404.1574(c)(4)(i). Plaintiff cites SSR 05-2 in support of his argument that there was no "impartial supporting evidence" of reduced work in the record and therefore that the ALJ was obligated to seek further information regarding Plaintiff's work attempt. (Doc. 16 at 2–3.) However, the ALJ's opinion did not address this element, instead ending the analysis after holding that Plaintiff failed to satisfy the first "termination" prong. Accordingly, the Court, like the Magistrate Judge, will here simply presume that repeated absences resulting from Plaintiff's mere search for a surgeon—as

5

Doc. 16 at 3; *see, e.g.*, Doc. 9-7 at 10; Doc. 9-9 at 47.) The ALJ specifically found that Plaintiff hid the fact of his colostomy bag from his employer and that Plaintiff was fired as soon as his condition was discovered. (Doc. 9-2 at 16; Doc. 9-6 at 57.) By Plaintiff's own admission, he "had to hide the fact of his colostomy bag from [his] employer and was terminated once [the employer] discovered it." (Doc. 9-6 at 59.) The ALJ concluded this reason for termination does not provide grounds for deeming Plaintiff's work attempt unsuccessful. The Magistrate Judge agreed, explaining that Plaintiff was fired "for not being forthright with his employer" rather than because of his impairment. (Doc. 15 at 6.)

The extent to which the employer's action could have been based on improper considerations regarding individuals with colostomies is not relevant under the Social Security Act. 42 U.S.C. § 423(d)(2)(A) (An individual shall be deemed disabled "only if his physical or mental . . . impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether . . . he would be hired if he applied for work."). Therefore, given the timing of the termination and that the employer's earlier response to Plaintiff's search-related absenteeism was simply to relegate Plaintiff to part-time status, as discussed in footnote three, *supra*, and not to terminate his employment, the ALJ's conclusion that Plaintiff's work did not end "because of [his] impairment" is supported by substantial evidence. *See* 20 C.F.R. § 404.1574(c)(4).

Plaintiff finally argues that his more recent welder job was improperly characterized as

---

opposed to missing work because of pain, other symptoms, or necessary medical treatment—qualify as absences from work "because of [the] impairment" and will focus its analysis on the "termination" criterion of 20 C.F.R. § 404.1574(c)(4).

6

sedentary rather than light.[7] As discussed in footnote one, *supra*, because no additional RFC analysis need be performed, the precise categorization of Plaintiff's 2007 position as a welder is an empty task. As his work attempt was successful, Plaintiff was demonstrably capable of performing the work, whatever the label. Nonetheless, the Court now turns to the ALJ's RFC analysis.

B.  The ALJ Properly Evaluated Plaintiff's RFC

Plaintiff argues that the ALJ erred in finding that he was able to perform a full range of sedentary work. Specifically, Plaintiff argues that "[d]espite finding that Mr. Hlatky was 'more limited' than the State agency physicians found, the ALJ failed to incorporate any of the postural activities found by the State agency sources into his RFC, including limitations to only occasional climbing, balancing, stooping, kneeling, crouching, and crawling." (Doc. 16 at 4.) Plaintiff here makes a distinction without a difference. The State agency medical consultants concluded that Plaintiff had an RFC for light work, except for the aforementioned postural limitations. (Doc. 9-2 at 20); SSR 96-9p (defining "postural limitations" to include "such activities as climbing . . . , balancing, kneeling, crouching, or crawling"). However, sedentary work does not involve more than occasional postural activity. SSR 96-9p ("Postural . . . activities are not usually required in sedentary work."). In short, without elaborating upon Plaintiff's

---

[7] "Sedentary work" involves lifting no more than ten pounds at a time and the occasional lifting or carrying of articles like docket files, ledgers, and small tools. 20 C.F.R. § 404.1567(a). Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. *Id.* Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. *Id.* "Light work," on the other hand, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. 20 C.F.R. § 404.1567(b). Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls. *Id.*

7

postural limitations as identified by the State agency medical consultants, the ALJ accounted for these limitations by limiting Plaintiff's RFC to sedentary, as opposed to light, work.[8] A finding that Plaintiff could perform sedentary work is not in conflict with the limitations specified.

Having established that Plaintiff had a residual functional capacity for a full range of sedentary work, the ALJ further determined that Plaintiff retained the capacity to perform the particular functional demands and job duties peculiar to his 2007 welding job as such demands and duties were actually performed. SSR 82-61; (Doc. 9-2 at 20). Based upon Plaintiff's description of his past relevant work, Plaintiff lifted nothing of substantial weight while on the job because of the use of an overhead crane, performed the job while sitting and standing, and would arise from the seated position about every hour. (Doc. 9-2 at 20–21, 34–35.) Furthermore, Plaintiff's testimony indicates that he was able to complete eight-hour shifts. (*See* Doc. 9-2 at 31) (stating that even when Plaintiff was working part time, he was able to work thirty hours in three-and-a-half days, or more than eight hours per day). Although he did not testify as to the precise number of hours he spent sitting and standing during each shift, as Plaintiff was able satisfactorily to complete his shifts,[9] the distribution of time spent in the seated and standing

---

[8] Counter to Plaintiff's assertion, this "translation" from light work with general limitations to sedentary work does not equate to the prohibited interpretation of raw medical data into functional terms as contemplated in *Edwards v. Astrue*, 2009 WL 764882, at *6 (D.S.C. Mar. 23, 2009). The ALJ was simply fulfilling the role of adjudicator and assessing Plaintiff's RFC in light of all available evidence.

[9] Plaintiff has argued that his 2007 work attempt was unsuccessful per 20 C.F.R. § 404.1574(c)(4)(i)—which addresses work missed because of the claimant's impairment—but has made no argument that said work attempt should have been deemed unsuccessful per 20 C.F.R. § 404.1574(c)(4)(ii)–(iv)—which address, among other things, the quality of claimant's work throughout the work attempt and whether such work met employer expectations.

8

positions was such that it was within Plaintiff's residual functional capacity.[10]

Plaintiff finally argues that the ALJ failed properly to evaluate his credibility. An ALJ's credibility determination, based upon the ALJ's observation of the Plaintiff, evaluation of his demeanor, and consideration of how his testimony fits in with the remainder of the evidence, is entitled to deference. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citation omitted). Here, in evaluating the credibility of Plaintiff's subjective complaints, the ALJ properly applied the appropriate two-step process as described in the regulations. (Doc. 9-2 at 18–20); *see Craig v. Chater*, 76 F.3d 585, 594–95 (4th Cir. 1996); 20 C.F.R. § 404.1529(b)–(c); SSR 96-7p. The ALJ first determined that Plaintiff's medically determinable impairments could reasonably be expected to produce his alleged symptoms, but that his statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible. (Doc. 9-2 at 18.) Contrary to Plaintiff's assertion, the ALJ did not solely consider his activities of daily living and conservative treatment history. Rather, the ALJ considered and discussed Plaintiff's testimony about his symptoms and limitations, the objective medical evidence, Plaintiff's treatment history, his activities of daily living, two reports of the consultative examiner, and the medical consultant's opinion. (Doc. 9-2 at 18–20.) Therefore, having so properly applied the two-step credibility process, the ALJ committed no error.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 12) be **DENIED**; that Defendant's Motion for Summary Judgment (Doc. 13) be **GRANTED**;

---

[10] Furthermore, by receiving unemployment benefits from the State of New York, even unto the time of the oral hearing before the ALJ, Plaintiff certified that he was then willing and able to work, and that he was looking for work. (Doc. 9-2 at 17, 29–30.)

9

and that the Commissioner's denial of benefits be **AFFIRMED**.

Signed: December 29, 2011

*Richard L. Voorhees*
Richard L. Voorhees
United States District Judge

10